# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **LORI S. PARSLEY,**   Plaintiff, | ) ) ) |
| **v.** | ) **MEMORANDUM OPINION** |
| | )    Case No. 1:13cv00092 |
| **RUSSELL COUNTY SCHOOL BOARD,**   Defendant. | ) ) ) ) |

This matter is before the court on the Defendant's Motion To Dismiss Pursuant To Fed. R. Civ. Pro 12(B)(1) And 12(B)(6) And Memorandum In Support Thereof, (Docket Item No. 4) ("Motion to Dismiss"), and on the Plaintiff's Motion To Amend Complaint, (Docket Item No. 9) ("Motion to Amend") (collectively "Motions"). A hearing was held before the undersigned on the Motions on June 11, 2014. Based on the arguments and representations of counsel, and for the reasons set out below, the Motion to Amend will be granted, and the Motion to Dismiss will be granted in part and denied in part.

I.

Lori S. Parsley, by Complaint filed November 23, 2013, (Docket Item No. 1), sues Russell County Public Schools, ("Defendant"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e, *et seq.*, alleging that she was discriminated against in her employment as an Aide based on her sex. Parsley alleges that she began her employment with the Defendant in August 1998 as a "Special Education Aide with the Trainable Mentally Disabled." (Complaint at 2.) Parsley remained in this position until May 2010, when she obtained her

Bachelor's Degree in Interdisciplinary Studies, lacking four courses to obtain a degree in Special Education. (Complaint at 2.) However, upon obtaining her Bachelor's Degree, she alleges that she became "Special Ed Eligible." (Complaint at 2.) Also, in May 2010, Regina Hicks, a "Learning Disability Aide," announced her retirement. (Complaint at 2.) However, Hicks's vacant position was not posted, making it impossible for Parsley to apply for it. (Complaint at 2.) Instead, Brandon Taylor, a male with a degree in History, and who, according to Parsley, had been unable to pass the Praxis I exam,[1] was provided notice of, and ultimately was offered, this position. (Complaint at 2.) At the time Taylor was offered this position, he served as a baseball coach at Lebanon High School, ("LHS"), and had worked as a personal aide to a special education student. (Complaint at 2.) According to Parsley, she was more qualified than Taylor for this position because she had been working for 10 years in the field of Special Education. (Complaint at 2.) Parsley claims that she asked Mr. Dodi, the principal at LHS, why she was not considered for this position, to which Dodi responded that openings were offered to the newest employees. (Complaint at 2.) It was only after Parsley challenged Dodi regarding compliance with Title VII laws that he offered her this job and informed Taylor that he would not be getting the position. (Complaint at 2.)

Also following Parsley's college graduation, Jared Sparks, a male baseball coach at Castlewood High School, ("CHS"), was transferred to LHS, ostensibly to take over the varsity baseball program. (Complaint at 2-3.) At the time of this transfer, no position for Special Education Teacher openly existed. (Complaint at 3.) However, after arriving at LHS, Sparks was given the position of Special Education Learning Disabled Teacher, for which, according to Parsley, he was not endorsed. (Complaint at 3.) Again, Parsley was not considered for this position.

---

[1] The Praxis I exam is a state exam required to obtain a teaching license.

(Complaint at 3.) When Parsley asked Dodi about this, Dodi stated that it was a "transfer," not a "new," position. (Complaint at 3.) It was then that Parsley advised of her intent to file an EEOC Complaint. (Complaint at 3.)

Parsley worked in the Learning Disabled Aide position from August 2010 through June 2012, under the supervision of Teacher Ida Ashbrook. (Complaint at 3.) In this position, Parsley's duties included: (1) teaching; (2) compiling lesson plans; (3) preparing students for SOL testing; (4) administering SOL tests; (5) assisting in writing Individual Education Plans, ("IEPs"); (6) addressing student behavior issues; and (7) covering the teacher's classes as needed. (Complaint at 3.) Ashbrook retired at the end of the 2011-2012 school year. (Complaint at 3.)

According to Parsley, under Virginia teaching certification rules, an individual can meet the student teaching requirement by employment as a Long-Term Substitute Teacher. (Complaint at 3.) She alleges that, since August 2010, she had been performing the duties of a Substitute Teacher, despite working under the title of Learning Disabled Aide, and had, therefore, fulfilled the student teaching requirement. (Complaint at 3.)

Parsley claims that she requested that Mike Puckett, the Superintendent for Russell County Schools in 2010, change her title from Aide to Long-Term Substitute Teacher to correctly reflect her functional title and to allow her to receive credit for student teaching necessary for licensure. (Complaint at 3.) However, both he and Dodi refused, even though, according to Parsley, both men knew that she had been performing the duties of a Long-Term Substitute Teacher for two years, they knew it would significantly negatively impact her pay scale, and they knew it would prevent her from receiving credit for the student teaching

requirement for licensure. (Complaint at 3-4.) Instead, Both Dodi and Puckett stated they wanted her to perform actual student teaching in Special Education. (Complaint at 3-4.)

Parsley alleges that she continued to function as a Long-Term Substitute Teacher for the 2012-2013 school year. (Complaint at 4.) However, the Defendant continued to deny her the monetary compensation and title reflecting her functional position and gave her the title of "Aide." (Complaint at 4.) Parsley further alleges that while "Teachers" are given five classes to teach, she taught six classes. (Complaint at 4.) All "Teachers" are paid extra for teaching a sixth class, but the Defendant refused to compensate her for teaching the sixth class because she was denied the classification of a "Teacher." (Complaint at 4.) On August 21, 2012, Brian Hooker, the new LHS principal, agreed to reclassify Parsley's position to "½ Day Teacher, ½ Day Instructional Aide." (Complaint at 4.) According to Parsley, this allowed her a nominal increase in pay, but still failed to accurately reflect that she was working as a full-time Teacher at all times of the day, including administering SOL testing, teaching SOL classes and completing and signing IEPs, all at the Defendant's instruction, and all functions which cannot be performed by an employee not a "Teacher." (Complaint at 4.)

Parsley alleges that in May or June 2013, another male, Mr. Rasnick, was hired at LHS as a Resource Teacher[2]. (Complaint at 5.) According to Parsley, Rasnick was only endorsed in Physical Education / Health and had no experience in Special Education. (Complaint at 5.) Principal Hooker advised Parsley that she

---

[2] The terms Resource Teacher and Special Education Teacher reflect the same position and may be used interchangeably.

was not considered for the position because of her classification as an "Aide." (Complaint at 5.)

Parsley alleges that, as early as March 2013, the Defendant was planning to terminate her employment, claiming that it needed to lay off one Instructional Aide, but then it hired two males, ultimately placing them in positions as Special Education Teachers. (Complaint at 5.) She alleges that the Defendant's plan was to first give each of these males a coaching position and then almost immediately thereafter add the position of Special Education Teacher for each of them. (Complaint at 5.)

Parsley alleges that she was constructively discharged on August 10, 2013. (Complaint at 5.) Almost immediately thereafter, the Defendant hired Andy Salyers, a laid-off Physical Education Teacher and volunteer football coach, as a Special Education Teacher in Language Arts / English at Lebanon Middle School, ("LMS"). (Complaint at 5.) According to Parsley, Salyers had no Special Education experience, nor was he licensed in Special Education. (Complaint at 5.) Also shortly after Parsley's alleged constructive discharge, the Defendant hired Mr. Potts, who moved from North Carolina to take a position, initially as a coach, and then as a Special Education Teacher. (Complaint at 5.) The Defendant allowed both Salyers and Potts three years from their respective dates of hire to meet the requirements necessary to obtain Special Education licenses, while denying Parsley the same and further denying Parsley the ability to obtain certification due to its refusal to properly classify, as well as compensate, her as a Teacher. (Complaint at 5-6.)

Parsley alleges that neither Potts, Rasnick nor Salyers had been issued a Special Education provisional license prior to the Defendant hiring each of them for the position of Special Education Teacher. (Complaint at 6.) Nonetheless, the Defendant advised the EEOC that each of these males was licensed prior to being hired by the Defendant. (Complaint at 6.) Further, according to Parsley, while refusing to assist her in obtaining her provisional license to teach Special Education, Defendant's employees Rebecca Dye and Kim Hooker took every action to ensure that these males submitted all appropriate documentation to obtain their Special Education provisional licenses. (Complaint at 6.)

Parsley alleges that the Defendant intentionally withheld or eliminated certain documents from her personnel file in its "copy" of her personnel file that it submitted to the EEOC. (Complaint at 7.) According to Parsley, these documents include, but are not limited to, a form signed by Rebecca Dye, confirming that Parsley was employed by the Defendant as a full-time employee, as well as applications submitted by Parsley over the last five years of her employment for Special Education positions, which included letters from her to Harry Steffey[3] and Mike Puckett. (Complaint at 7.) She alleges that such fraudulent actions by the Defendant were for the sole purpose of intentionally misrepresenting the true facts to the EEOC. (Complaint at 7.)

Parsley alleges that the Defendant's discriminatory actions were intentional and deliberate. (Complaint at 6-7.)

Attached to Parsley's Complaint, (Docket Item No. 1-1), is a Notice of Right to Sue issued by the Equal Employment Opportunity Commission on August 26,

---

[3] Parsley does not indicate who Harry Steffy is.

-6-

2013, which she states she received on September 3, 2013. (Complaint at 1.) The court's docket shows that Parsley's Complaint was filed with the court on November 23, 2013.

II.

The Defendant has moved to dismiss Parsley's claim based on two arguments: (1) this court lacks subject matter jurisdiction because Parsley has not properly named a legal entity or individual as a defendant; and (2) Parsley fails to state a plausible claim for sex discrimination based on disparate treatment under Title VII. Rule 12(b)(1) provides for dismissal of a complaint for "lack of subject matter jurisdiction." FED. R. CIV. P. 12(b)(1). A plaintiff has the burden of proving subject matter jurisdiction. *See Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 371 (4th Cir. 2012). Plaintiff named Russell County Public Schools as the defendant in the Complaint. However, as defense counsel argues in its brief, the school board is the proper party to be sued. Pursuant to Virginia Code § 22.1-71, the "school board is … a body corporate and, in its corporate capacity, is vested with all the powers and charged with all the duties, obligations and responsibilities imposed upon school boards by law and may sue [and] be sued … ." VA. CODE ANN. § 22.1-71 (2011 Repl. Vol.). In the Motion to Amend, Parsley now seeks to amend the Complaint only insofar as to substitute the Russell County School Board as the proper defendant. I will grant the Motion to Amend, and the Russell County School Board will be substituted as the Defendant in this case.[4] Allowing such an amendment renders the Motion to Dismiss on 12(b)(1) grounds moot, and I will deny that portion of the Motion to Dismiss.

---

[4] All references hereinafter will be to the Amended Complaint. (Docket Item No. 9-1.)

The Defendant also argues that Parsley's Amended Complaint should be dismissed pursuant to Rule 12(b)(6). Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atl. Corp. v. Twombly*, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). Additionally, the Court established a "plausibility standard" in which the pleadings must allege enough to make it clear that relief is not merely conceivable, but plausible. *See Twombly*, 550 U.S. at 555-63.

The Court further explained the *Twombly* standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009):

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. … Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. …
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

(Internal citations omitted).

Thus, for the purpose of ruling on the Motion to Dismiss, this court will assume that all well-pleaded factual allegations contained in the Amended Complaint are true, and all reasonable inferences will be drawn in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In deciding a Rule 12(b)(6) motion, the court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Moore v. Flagstar Bank*, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quotation omitted). The court also may look at documents incorporated into the complaint by reference, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), "as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic," *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). The court also may take judicial notice of statutes. *See Philips*, 572 F.3d at 180.

Under Title VII, an employer may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a) (West 2012). Employment discrimination based on sex discrimination in violation of 42 U.S.C. § 2000e-2 can be proven by direct or circumstantial evidence. *See U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983). Direct evidence is "'conduct or statements that both reflect … the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Spain v. Va. Commonwealth Univ.*, 2009 WL 2461662, at *7 (E.D. Va. Aug, 11, 2009) (quoting *Rhodes v. FDIC*, 257 F.3d 373, 391-92 (4th Cir. 2001)).

Absent direct evidence, the elements of a prima facie Title VII discrimination in a failure to hire case are established through the burden-shifting scheme established in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973).

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination by showing by a preponderance of the evidence that: (1) she is a member of a protected class; (2) she applied for the position in question; (3) she was qualified for that position; and (4) the defendant rejected her application under circumstances that give rise to an inference of unlawful discrimination. *See Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005); *see also Williams v. Giant Food, Inc.*, 370 F.3d 423, 430 (4th Cir. 2004); *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 n.3 (4th Cir. 2003) ("In failure-to-promote cases such as this, 'the framework of proof for disparate treatment claims … is the same for the actions brought under Title VII, or § 1981, or both statutes.'") (quoting *Mallory v. Booth Refrigeration Supply Co., Inc.*, 882 F.2d 908, 910 (4th Cir. 1989)); *Haywood v. Gutierrez*, No. 1:08cv981, 2009 WL 1208111, at *5 n.2 (E.D. Va. Apr. 30, 2009) (stating that the above-mentioned framework applies, "with little variation, to failure-to-promote claims whether based upon race, gender, or age").

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To survive a 12(b)(6) motion to dismiss, a plaintiff need not plead facts that constitute a prima facie case, but the factual allegations must still meet the standards set out in *Twombly* and *Iqbal*. *See Coleman v. Md. Ct. of Apps.*, 626 F.3d 187, 190 (4th Cir. 2010) *aff'd sub nom Coleman v. Ct. of Apps. of Md.*, 132 S. Ct. 1327 (2012) (citations omitted). However, courts frequently use the *McDonnell Douglas*

evidentiary framework to inform their evaluation of a plaintiff's allegations on a 12(b)(6) motion to dismiss. *See Coleman*, 626 F.3d at 190.

Treating Parsley's allegations in the Amended Complaint as true, and drawing all reasonable inferences in her favor, as the court must, I find that she has sufficiently alleged facts which, if believed, would state a plausible failure to hire claim with regard to one of the positions referenced in her Amended Complaint. At the outset, I find that Parsley has sufficiently alleged that she is a member of a protected class because she is a female. Turning to the specific hiring decisions of the Defendant, I find that Parsley has not alleged sufficient facts raising a right to relief above the speculative level with regard to the position of the Learning Disabled Aide that was initially offered to Taylor because it was Parsley who ultimately was offered that position. I also find that, with regard to the Special Education Teacher positions offered to Salyers and Potts, Parsley has not alleged sufficient facts demonstrating a plausible disparate treatment discrimination claim against the Defendant because, according to her Amended Complaint, she already had been constructively discharged at the time both Salyers and Potts were hired. In particular, Parsley alleges in her Amended Complaint that she was constructively discharged on August 10, 2013. (Amended Complaint at 5.) She further alleges that almost immediately *after* her constructive discharge, the defendant hired Andy Salyers. (Amended Complaint at 5.) Likewise, she alleges that shortly *after* her constructive discharge, the defendant hired Potts. (Amended Complaint at 5.) I find that such allegations cannot sufficiently demonstrate a plausible right to relief with regard to the hiring of these two individuals because she has not alleged, nor can she, that she "applied for the position in question." Parsley alleges in her Amended Complaint that she was constructively discharged because the Defendant's actions made clear to her that she would never be treated

equal to males by the Defendant and that the Defendant would never provide her the same job opportunities, title/job classification or compensation commensurate with her duties, solely based on her gender. (Amended Complaint at 6-7.) That being said, I cannot find that Parsley has sufficiently alleged facts showing that she applied for either of these two positions following her alleged constructive discharge, thereby precluding a finding that she has successfully alleged facts raising a plausible claim of disparate treatment discrimination based on gender with respect to these two jobs.

That leaves the court to consider whether Parsley has stated a claim of sex discrimination in the Special Education Learning Disabled Teacher job offered to Sparks and the Resource Teacher job offered to Rasnick. I will discuss each of these in turn.

Parsley alleges that Sparks, a male baseball coach at CHS, was transferred to LHS, ostensibly to take over the varsity baseball program. (Amended Complaint at 2-3.) She further alleges that when Sparks transferred to LHS, no Special Education Teacher position openly existed, but after arriving at LHS, he was given the position of Special Education Learning Disabled Teacher. (Amended Complaint at 3.)

In her Amended Complaint, Parsley incorporates by reference the "Virginia certification rules." That being the case, I find that the court also may consider such rules in deciding this Motion to Dismiss. *See Moore*, 6 F. Supp. 2d at 500. In addition, as stated above, the court may take judicial notice of statutes. *See Philips*, 572 F.3d at 180. According to Virginia Code Annotated § 22.1-299:

> No teacher shall be regularly employed by a school board or paid from public funds unless such teacher holds a license or provisional license issued by the Board of Education. …

Therefore, in order for Parsley to be qualified for the positions for which she applied, she must have held a license or a provisional license. According to Parsley's Amended Complaint, she held neither a license nor a provisional license at the time either Sparks or Rasnick was hired. Instead, the allegations in her Amended Complaint clearly state that in May 2010, she received a Bachelor's Degree in Interdisciplinary Studies, lacking four courses for a degree in Special Education. (Amended Complaint at 2.) It was at this time, she alleges that she became "Special Ed Eligible," a term which she does not define and which is not defined in the regulations. *See* VA. CODE ANN. § 22.1-298.1 (2011 Repl. Vol. & 2013 Supp.).

At the time Sparks was hired, Parsley held the title of "Aide." At the time Rasnick was hired, Parsley's title had been reclassified to "½ Day Teacher, ½ Day Instructional Aide." While this reclassification resulted in a "nominal increase in pay," she still did not hold a license or a provisional license. Instead, Parsley alleges that she had, in effect, been performing the duties of a Teacher since August 2010, when she began working as a Learning Disabled Aide under Teacher Ida Ashbrook. That being the case, she further alleges that her job actually met the description of a Long-Term Substitute Teacher, which, according to Parsley, constitutes an alternate means by which the student teaching hours required for licensure may be achieved. Even assuming the truth of Parsley's allegations, I find that she has failed to sufficiently state facts which would plausibly show that she was qualified for the position ultimately given to Sparks. More specifically, even assuming that Parsley had been performing the duties of a Long-Term Substitute

Teacher at some point, and that such classification would satisfy the student teaching requirement for licensure, the Amended Complaint clearly shows that Parsley could not have been classified as such at the time that Sparks was hired. It can be reasonably inferred from the Amended Complaint that Sparks was hired at some time following Parsley's college graduation, which was in May 2010, but prior to August 2010, when Parsley took the position of Learning Disabled Aide under Ashbrook. (Amended Complaint at 2-3.) Parsley does not allege that she began performing the duties of a Teacher until she began working in this position under Ashbrook. (Amended Complaint at 3.) Therefore, she could not have been classified as a Long-Term Substitute Teacher at the time Sparks was hired as a Special Education Learning Disabled Teacher. Thus, even assuming the truth of Parsley's allegations in the Amended Complaint, I find that such allegations are, nonetheless, insufficient to plausibly show that she was qualified for the position which Sparks ultimately received. That being the case, I further find that Parsley's allegations are not sufficient to plausibly state a claim for Title VII disparate treatment discrimination with respect to the Defendant's failure to hire her for this job. I will grant the Motion to Dismiss with respect to this position.

Lastly, I find that Parsley has alleged sufficient facts to state a plausible Title VII claim against the Defendant for disparate treatment discrimination with respect to the position held by Rasnick. As stated above, Parsley is a member of a protected class because she is female. I also find that she has sufficiently alleged that she applied for the position. While she does not explicitly allege that she applied for the position for which Rasnick was hired, she does state in her Amended Complaint as follows: "Defendant withheld … certain documents from [her] personnel file in its "copy" … it submitted to the EEOC. These documents include … applications submitted by plaintiff over the last five years of her

employment for Special Education positions…." (Amended Complaint at 7.)  I find that this is sufficient at this point in the proceedings to allege that Parsley applied for this position.  I also find that Parsley has sufficiently alleged that she was qualified for the position to overcome the Motion to Dismiss.  I so find because, at the time Rasnick received the position of Resource Teacher in May or June of 2013, Parsley allegedly had been performing the duties of a Teacher for nearly three years, thereby qualifying for the title of Long-Term Substitute Teacher.  According to Parsley, such a classification would fulfill the student teaching requirement she lacked to obtain licensure.  All of this being the case, and taking Parsley's factual allegations as true and drawing all reasonable inferences therefrom, I find that she has alleged facts sufficient to at least plausibly demonstrate that she was qualified for the position of Resource Teacher that ultimately was given to Rasnick.  Parsley also must allege sufficient facts to make a plausible showing that the Defendant rejected her application under circumstances giving rise to an inference of unlawful discrimination.  I find that she has made such a showing.  Specifically, in connection with Rasnick's hire, Parsley alleges that he was endorsed only in Physical Education / Health and had no experience in Special Education, while she had worked in the field of Special Education for 13 years.[5]  She also alleges that Principal Hooker advised her that she was not considered for the position due to her classification as an Aide, but she had been performing the duties of a Teacher since 2010, at the instruction of the Defendant.  She further alleges that Rasnick had not been issued a Special Education provisional license prior to being hired as a Special Education Teacher, but that two employees of the defendant took every action to ensure that he

---

[5] The Amended Complaint alleges that in 2010, when Taylor was offered the Learning Disability Aide position, Parsley had 10 years of experience in Special Education. (Amended Complaint at 2.)  Therefore, it can reasonably be inferred that she had 13 years of such experience in 2013 when Rasnick was hired as a Resource Teacher.

submitted all appropriate documentation to obtain his, while they refused to assist her in obtaining her provisional license to teach Special Education. (Amended Complaint at 6.)

I find that these allegations sufficiently state circumstances plausibly giving rise to an inference of unlawful discrimination. Whether Parsley will be able to come forward with sufficient evidence to actually demonstrate a prima facie case of Title VII disparate treatment discrimination against the Defendant is yet to be determined. I note that at the June 11 hearing, the defendant argued that Parsley had not adequately pled this claim because, on the face of her Complaint, she admitted that she was not similarly situated to Rasnick in that she was not licensed. Parsley alleges that the reason she was not licensed was the Defendant's discriminatory treatment in refusing to reclassify her as a Long-Term Substitute Teacher. Therefore, at this juncture in the case, I find that her Amended Complaint has sufficiently stated such a claim based on her gender against the Defendant with respect to the hiring of Rasnick. Therefore, I will deny the Motion to Dismiss with respect to the Defendant's failure to hire Parsley for this position.

At the June 11 hearing, Parsley's counsel argued that, in addition to claims of discrimination in failing to hire her for the positions awarded to Taylor, Sparks, Rasnick, Salyers and Potts, she also had pled a claim for sex discrimination in Defendant's failure to reclassify her as a Long-Term Substitute Teacher beginning in August 2010. I do not read the Amended Complaint as containing any such separate claim. Insofar as it attempts to do so, I find that such claim is not adequately pled.

For all of the reasons stated herein, I will grant the Motion to Amend, and the Russell County School Board will be substituted as the Defendant in this case. I will deny the 12(b)(1) Motion to Dismiss as moot, and I also will the deny the 12(b)(6) Motion to Dismiss, insofar as I find that Parsley's Amended Complaint alleges sufficient facts to state a Title VII sex discrimination claim against the Defendant with respect to its hiring of Rasnick as a Special Education Teacher. In all other respects, the Motion to Dismiss is granted. An appropriate order will be entered.

ENTERED: June 12, 2014.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE